UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALAURO JAVIER VALENCIA MICOLTA,

v.                                             Case No. 8:05-cr-456-T-17MAP
                                                        8:07-cv-1835-T-17MAP
UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255.  (Doc. cv-1; cr-262).  A review of the record demonstrates that, for the following reasons, the motion to vacate must be denied.

Procedural Background

In March 2006, Alauro Javier Valencia Micolta pled guilty without the benefit of a written plea agreement to possessing five kilograms or more of cocaine with intent to distribute it while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. §§ 1903(a) and (g), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii), and conspiring to possess five kilograms or more of cocaine with intent to distribute it while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. §§ 1903(a), (g), and (j) and 21 U.S.C. § 960(b)(1)(B)(ii). (Doc cr-100, 103, 130). This Court sentenced Micolta to serve 135 months' imprisonment, to be followed by five years' supervised release. (Doc. cr-141).

Micolta directly appealed the conviction and sentence (Doc. cr-144) raising the following issues:

[1]

>   1. Whether this Court clearly erred in finding that Micolta had not been a minimal or minor participant in his offenses; and
>
>   2. Whether this Court imposed a reasonable sentence.

The Eleventh Circuit affirmed the conviction and sentence. *United States v. Micolta*, No. 06-13841, 215 Fed. App'x 924 (11th Cir. Jan. 30, 2007); (Doc. cr-244).[1] Micolta now timely files a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel prior to the entry of his guilty plea and at sentencing. (Doc. cv-1 at 4-7; Doc. cv-2 at 4-12).

## FACTS

In October 2005, Jose Vincente Mesa and Micolta took a go-fast vessel to sea in order to rendezvous with and replace another go-fast vessel, which had been transporting cocaine but which had become disabled and had begun to take on water. (Doc. cr-168 at 8-15) ; Presentence Investigation Report ("PSR") ¶¶ 14, 20. Micolta had agreed to pilot the disabled vessel back to land after the cocaine had been moved to the substitute go-fast vessel for a $720 payment. (Doc cr-168 at 8-15). The plan for Micolta to pilot the disabled vessel changed when he could not repair the disabled vessel. (Doc. cr-168 at 8-15). The crews of both vessels, a total of eight including Micolta, moved the cocaine from the disabled vessel to the replacement vessel and left, intending to deliver the cocaine. (Doc. cr-168 at 8-15). On October 19, 2005, in international waters, the replacement go-fast vessel attempted to flee at a high rate of speed when a United States Navy helicopter approached it. PSR ¶¶ 8-9. As they fled, the vessel's crew, including Micolta, dumped

---

[1] Copies of the appellate briefs are attached as Exhibits A, B, and C to Doc. No. 7

approximately fifty to sixty-five bales of cocaine into the water. (Doc. cr-168 at 8-15; PSR ¶ 9). A United States Navy vessel and a United States Coast Guard vessel jointly attempted to intercept the go-fast vessel but it flipped over during the chase and sank. PSR ¶ 10. The Coast Guard rescued seven crew members from the water. PSR ¶ 10. Those rescued reported that the eighth crew member could not swim and probably had drowned. PSR ¶ 10. The Coast Guard and/or Navy officials who saw the size, shape, and number of the bales discarded estimated based on their experience that each bale had weighed approximately twenty-five kilograms, for a total of between 1250 and 1625 kilograms of cocaine. PSR ¶ 9.

The United States Probation Office recommended (1) that this Court establish Micolta's base offense level under the United States Sentencing Guidelines at level thirty-eight based on the amount of cocaine; (2) that this Court reduce his offense level by two pursuant to the safety valve provision of USSG §2D1.1(b)(9); (3) that this Court not reduce his offense level based upon his role in his offenses; and (4) that this Court reduce his offense level by three for acceptance of responsibility pursuant to USSG §3E1.1, for an adjusted offense level of level thirty-three, and criminal history category I. PSR ¶¶ 26-37; Addendum to PSR.

Micolta objected to the probation office's calculation of the offense level on the ground that the probation office had not recommended a reduction for a mitigating role in his offenses pursuant to USSG §3B1.2. Addendum to PSR; (Doc. cr-168 at 5-6). This Court denied Micolta any adjustment for his asserted role in his offenses and established his offense level at thirty-three, which, with his criminal history category of I, resulted in an advisory guidelines range of 135-168 months' incarceration. (Doc. cr-168 at 17).

Micolta asked the Court to sentence him below the advisory guidelines range to a nine-year (108 month) term of incarceration because he lacked education, was poor, and was less culpable than some other defendants who would receive an eleven-year sentence. (Doc. cr-168 at 19-20). The Court declined to do so and imposed a 135-month sentence, which was at the low end of the advisory guidelines range. (Doc. cr-168 at 20).

### Cognizability

Micolta raises under Grounds One and Two claims that his counsel provided ineffective assistance. (Doc. cv-1 at 4-7; Doc. cv-2 at 4-12). Those claims are cognizable under 28 U.S.C. § 2255. *See Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings).

### Discussion

Micolta complains that his plea is invalid and his counsel ineffective because counsel failed to: (1) "go over the entire factual basis of the plea with him;" (Doc. cv-2 at 5); (2) "urged [him] to plead guilty without a written plea agreement and without explaining fully the sentencing consequences of such plea;" (Id. at 5-6.); and (3) advise [him] that he may be held for approximately 1,250 and 1,625 kilograms of cocaine, in which he was not indicted for" (Id. at 6). Micolta has failed to show any deficient performance by his attorney or any prejudice from alleged deficient performance.

### Standard for Ineffective Assistance of Counsel

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied

on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the

alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill*, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, the petitioner claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.*

**Micolta cannot meet the *Strickland* test because his claims lack merit**.

As to Micolta's claim that his lawyer represented that Micolta would be "subject to

a term of imprisonment of approximately ten years" (Doc. cv-2 at 6) or that counsel failed to "explain to [him] that he would be pleading to the amount of drugs that were ultimately listed in the [PSR]" (Id.), the Magistrate Judge informed him how his sentence would be calculated and that he faced would be "a mandatory minimum term of imprisonment of ten years, up to a maximum sentence of life imprisonment." (Doc. cr-166 at 7-8). Micolta is not entitled to relief on this claim as demonstrated below because he understood the nature of the charges to which he was pleading guilty: he had discussed the ramifications of the plea with his attorney prior to the entry of his plea, and he affirmatively indicated to the Court that he understood the proceedings and wished to plead guilty because he was guilty.

Pursuant to Fed. R. Crim. P. 11, the district court must address the defendant personally in open court and inform the defendant of, and determine that he understands, a list of fourteen specific items, including the trial rights of the defendant, the consequences of a guilty plea, and the obligations of the court. See Fed. R. Crim. P. 11(b)(1). Specifically, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

The United States Magistrate Judge inquired as to whether counsel had discussed the sentencing guidelines with him and Micolta indicated in the affirmative. (Id. at 9). The Magistrate Judge explained how the probation officer would prepare a report for this Court concerning Micolta's case; how counsel would review the report with him; and if there were a problem with the report, counsel could "complain to the probation officer," and the report

could be changed or the sought-after change could be brought to this Court's attention as an objection. (Id. at 9-10). The Magistrate Judge explained that, ultimately, even if counsel or Micolta had projected a sentence calculation, the United States District Judge would rule on any objections to the PSR, calculate the applicable guidelines range, and "sentence accordingly." (Id. at 10). Again, Micolta indicated he understood how he would be sentenced. (Id. at 11).

The Magistrate Judge reviewed the rights that Micolta was giving up in order to plead guilty including his right to go to trial;, to be represented by counsel at that trial; to cross-examine witnesses; and to present a defense or testify on his own behalf. (Id). Micolta indicated he was aware of what rights he was giving up and he was satisfied with his counsel. (Id. at 12). After reading the factual basis, which included a drug calculation of "five or more kilograms of cocaine," the Magistrate Judge explained the basis of the conspiracy charge. (Id. at 12-13). Micolta agreed he understood the elements of the offense to which he was pleading guilty and still wished to do so. (Id. at 13). The Magistrate Judge reiterated the basis of the charges in Counts One and Two and Micolta again indicated that he understood "the nature of the crime and the elements" and wished to plead guilty. (Id. at 14-16). The Court informed Micolta that the factual basis included:

> [T]he crew members of the helicopter videotaped the speed boat and its crew members, eight in number, dump approximately 50 to 65 bales of white plastic bundles over the side.
>
> Now, one of the–bales were suspected of being cocaine with each bail approximately 25 kilograms in weight.

(Id. at 17). The Court asked Micolta if "that information" were true and he said it was correct. (Id). Micolta agreed that he "knowingly and willfully" possessed more than five

kilograms of cocaine. (Id). Micolta indicated he did not have any other questions about his plea and his counsel answered affirmatively that she believed he was pleading guilty "knowingly and voluntarily." (Id. at 17-18). The Magistrate Judge then accepted Micolta's plea. (Id. at 18).

Micolta fails to show that his claims regarding his plea are true or that his substantial rights were affected. The Court addressed the core concerns of Rule 11, and Micolta's admissions at the plea colloquy attest that he knowingly pled guilty to the drug conspiracy. *See United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). Nothing in Micolta's motion to vacate indicates that a different result could have occurred because he does not contest his guilt nor claim he would have gone to trial but for counsel's alleged ineffective actions. He merely is trying to challenge the calculation of his sentence based on drug quantity.

At sentencing, Micolta agreed that he and his counsel had read and discussed the PSR. (Doc. cr-168 at 4). If Micolta and his counsel had chosen to object to his role in the offense, nothing precluded him from raising the issues he now complains of at sentencing. (Id). The undersigned United States District Judge questioned Micolta's counsel concerning his objection, including the statement, "I'm not trying to have this man not say what is the truth, but if it conflicts with his plea, you're in a different situation." (Id. at 7). Counsel replied that Micolta "accepts full responsibility for the fact that he went out there and aided that distressed boat that had drugs." (Id). Following this exchange, counsel advised this Court that Micolta would "explain to the Court what he did." (Id). At that time, the government agreed that substantial assistance was still a possibility. (Id. at 8). The Court allowed counsel and Micolta a chance to confer to make sure whatever statement Micolta

knew the consequences of what he said. (Id. at 8-9). Micolta then related his version of the events leading to his arrest. (Id. at 9-10). In essence, Micolta attempted to characterize his role as being lesser than the other participants because of his actions in taking a substitute boat to the disabled boat. At no time, did Micolta advise this Court that he was also challenging the amount of drugs attributable to this drug conspiracy. In overruling Micolta's objection to his role, this Court noted that Micolta "knowingly, voluntarily and intentionally took a vessel out for the purpose of providing that vessel for continuation of the delivery process of these illegal drugs." (Id at 16). In overruling Micolta's other argument in mitigation of his role in the offense, this Court advised him that he was going to be sentenced at the low end of the guidelines. (Id. at 20).

Based on these facts, Micolta should not now be able to blame his counsel for advising him "to plead guilty" or "not discussing the consequences of that action" or the "length of his sentence" because those arguments are clearly contradicted by the plea colloquy and refute his claim that his plea was unknowingly or involuntary. (Doc. cv-2 at 6-7). Moreover, despite Micolta's claims to the contrary, clearly he knew the drug amount included "50 to 65 bales" with "each bail approximately 25 kilograms in weight" because the Magistrate Judge advised him of this amount during the change of plea hearing and advised him that the Probation Office would calculate the drug quantity, but that Micolta could challenge the accuracy of the PSR by objecting. (Doc.166 at 17). The record shows that Micolta admitted under oath to participating in a drug conspiracy involving more than five kilograms of cocaine listed in his indictment and specifically to the amount later cited in the PSR that used to determine his sentence.  Micolta's his self-serving statement that the "1,250 and 1,625 kilograms of cocaine" "was never discussed with counsel" is without

10

merit.

Micolta fails to suggest what witnesses or evidence his attorney could have presented at sentencing that would have changed his guidelines calculations. Moreover, Micolta's claim is merely an attack upon this Court's interpretation and application of the sentencing guidelines, and thus this issue is not cognizable on collateral attack. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Burke*, 152 F.3d at 1331-32. Challenges to the application of particular guidelines are not cognizable under section 2255. To allow this challenge now (in the guise of an ineffective assistance claim) would render collateral review nothing more than a substitute for direct appeal, which is not the purpose of section 2255. *See Burke*, 152 F.3d at 1331. In any event, the record before this Court supports its sentencing findings and Micolta's claims on this ground is meritless.

Finally, Micolta's *Booker* claims that counsel was ineffective for failing to raise issues related to this Court's determination concerning the drug calculation cited in the PSR but not listed in the indictment or that Micolta would have made his plea unknowing or involuntary are factually incorrect and legally flawed. (Doc. cv-2 at 7-11) . Micolta's claim that he "would have rejected the plea" differs from a claim of ineffective assistance of counsel where a petitioner claims that but for counsel's advice, he would have gone to trial and obtained a different result. Micolta pled guilty, and an unconditional guilty plea waives all nonjurisdictional defects in the indictment. *See United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003) (generally, voluntary, unconditional guilty plea waives all nonjurisdictional defects in proceedings).

Because *Booker* is based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and Apprendi error is not jurisdictional, *United States v. Anderson*, 289 F.3d 1321, 1326 (11th

Cir. 2002) (*Apprendi* errors are neither jurisdictional nor structural), the failure to charge a the specific drug quantity in the indictment would be a defect that Micolta waived by pleading guilty and admitting to the factual basis. Moreover, Micolta's *Booker*-based claims are procedurally defaulted, *see McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001), and *Booker* is not retroactively applicable on collateral review, *see Varela v. United States*, 400 F.3d 864, 867 (11th Cir.), *cert. denied*, 546 U.S. 924 (2005).

This Court applied the law to uncontested facts concerning the drug quantity and Micolta was sentenced at the low end of the guidelines and not sentenced beyond the statutory maximum which in this case was life imprisonment. Contrary to Micolta's contention, his sentence does not contain Fifth or Sixth Amendment error because this Court correctly determined his sentence based on the quantity of drugs to which he had admitted. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005). Consequently Micolta fails to meet his burden under *Strickland*. Counsel did not perform deficiently by failing to litigate these claims because they are legally flawed and lack merit. Counsel cannot be deemed to have performed deficiently by failing to address an issue that reasonably would have been considered to be without merit. *See Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986).

**Accordingly, the Court orders**:

That Micolta's motion to vacate (Doc. cv-1; cr-262) is denied.  The Clerk is directed to enter judgment against Micolta in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on August 18, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Kathy J.M. Peluso
Alauro Javier Valencia Micolta

13